IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 28, 2004 Session

# STATE OF TENNESSEE, DEPARTMENT OF CHILDREN'S SERVICES v. LILLI LOWERY, IN THE MATTER OF M.D.B. (dob 11/18/96)

### Direct Appeal from the Juvenile Court for Hamblen County
### No. 13157     Hon. Mindy Norton Seals, Judge

### No. E2004-00517-COA-R3-PT  - FILED JANUARY 10, 2005

The Trial Court determined there were statutory grounds to terminate the mother's parental rights and that termination was in the child's best interest, all by clear and convincing evidence. On appeal, we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Juvenile Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which D. MICHAEL SWINEY, J., and SHARON G. LEE, J., joined.

Scott A. Hodge, Morristown, Tennessee, for Appellant.

Paul G. Summers, Attorney General and Reporter, and
Juan G. Villasenor, Assistant Attorney General, Nashville, Tennessee, for Tennessee Department of Children's Services.

### OPINION

The State filed a Petition for Temporary Custody on September 20, 2002, seeking to have MDB declared dependent and neglected. A Protective Custody Order was entered, placing the child in state custody, and appointing a Guardian Ad Litem. On October 3, 2002, a Permanency Plan was executed, with the stated goal of reunifying the mother and child. The Plan acknowledged that

the mother had substance abuse issues, and stated the mother was to obtain an assessment and that she would initiate and complete the recommended treatment. The mother was also to attend AA/NA meetings, with the goal that the mother would be alcohol and drug free. Also, the mother was to arrange visitation through DCS, for a minimum of 4.3 hours per month, and that she was to initiate services with a mental health provider to treat major depression and anxiety disorder, and that she would obtain appropriate housing and provide a safe, stable environment for the child.

A hearing was then held on November 13, 2002, and a Consent Decree was entered, where the parties agreed that the child should remain in DCS custody, and the Department would make reasonable efforts toward reunification.

On September 24, 2003, a Petition to Terminate Parental Rights of the Mother was filed, alleging that since the removal in September 2002, the mother had no suitable home, the conditions leading to removal still persisted and there was little likelihood of remedy, and the mother had failed to substantially comply with the Permanency Plan.

At trial numerous witnesses testified, and following a hearing the Court entered a Termination of Parental Rights Decree, which incorporated the Court's Findings and Judgment. In the Court's Findings and Judgment, the Court reviewed the evidence that was presented, such as the fact that the DCS workers explained the requirements of the Plan to the mother repeatedly, that the mother was progressing until May 2003, when she was observed returning from a visit with the child sitting on her lap driving the car, with no seatbelt, and from that time only supervised visits were allowed. The Court found that the DCS representative repeatedly asked the mother if she was attending the AA/NA meetings involving her counseling, but the mother refused to sign a release for her counseling and only provided AA/NA documentation through December, 2002. Further, in September 2003, the mother informed the representative that she did not need to be in a treatment program and could "do it herself".

The Court found that Pam Hill, the case manager, was concerned because the mother would leave messages on her voice mail in the middle of the night, and in May 2003 the mother did not appear in court and later explained that she overslept. The Court found that the mother told Hill that four drug dealers had been in her house and had left a gun there, which she gave to the police. The Court found that Hill was concerned because the mother's behavior was strange and the mother said that people in her neighborhood were giving her drugs. Further, that the mother visited the child on July 17, 2003, and used crack cocaine the next day. The Court outlined that the mother went to detox at Peninsula for four or five days and then entered a year long program through Stepping Out Ministries, but dropped out of that program after 13 days. The Court reiterated the mother admitted that she had not been in therapy since December 2002, and had lived in 8 places and worked at 9 jobs since February 2003. Further, that the mother had two criminal charges (telephone harassment and bad checks) since the removal. Finally, the Court found that the child was thriving in his foster placement, and that his foster parents wanted to adopt him.

The Court concluded that the Department had proven the persistency of the conditions

by clear and convincing evidence, and that the conditions would likely cause the child to be subjected to further abuse and neglect if he was returned to the mother's care. The Court further found that there was little likelihood that the conditions would be remedied in the near future. The Court concluded that termination of parental rights was in the child's best interest.

The issues raised by the mother on appeal are:

1. Whether clear and convincing evidence supports the trial court's decision to terminate mother's parental rights on any of several statutory grounds?

2. Whether clear and convincing evidence supports the trial court's determination that termination of mother's rights was in the child's best interests?

3. Whether DCS made reasonable efforts on behalf of mother?

A parent has a fundamental right to the care, custody, and control of her child. *Stanley v. Illinois*, 405 U.S. 645, 92 S. Ct. 1208 (1972). This right is not absolute, and may be terminated if there is clear and convincing evidence justifying termination under the applicable statute. *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388 (1982); *In re Drinnon*, 776 S.W.2d 96 (Tenn. Ct. App. 1988). Further, the court must find that termination of parental rights is in the child's best interest. *Tennessee Dept. of Human Services v. Riley*, 689 S.W.2d 164 (Tenn. Ct. App. 1984); Tenn. Code Ann. §36-1-113(c).

We are required to affirm the Order of Termination if the record contains clear and convincing evidence to support any of the bases found by the trial court. *In re C.W.W.*, 37 S.W.3d 467 (Tenn. Ct. App. 2000). We have also previously explained that "clear and convincing evidence" is a more stringent requirement than a preponderance of the evidence, but less stringent than "beyond a reasonable doubt." *O'Daniel v. Messier*, 905 S.W.2d 182 (Tenn. Ct. App. 1995).

In this case, the trial court terminated the parental rights of the mother on these statutory grounds:

1) failure to substantially comply with the plan of care; and

2) that the child had been removed for more than six months, and the conditions requiring removal still persisted and would not likely be remedied in the near future, and continuation of the parent/child relationship diminished the child's chances for integration into a permanent home.

*See* Tenn. Code Ann. §36-1-113(g). Additionally, the Court found that termination of parental rights was in the child's best interest.

While the mother contends that there was not clear and convincing evidence to terminate the relationship on statutory grounds, she admitted that she never completed any of the drug treatment programs she was in, and had not been to counseling since December 2002. The mother testified that she attended AA/NA meetings, but her records show that her attendance was quite sporadic up until the time of the filing of the petition. She admitted that she had not refrained from using drugs and alcohol, and had not refrained from criminal behavior. She claimed at trial that she had suitable housing, even though she had lived in multiple places in the previous year.

The record establishes that the mother understood her responsibilities under the Plan, and had agreed to comply. However, her efforts at compliance were minimal and she wasted numerous opportunities, including the year long program which had been paid for by others, but she left this program after only 13 days. Essentially, the mother made no real progress in the 16 months that the child had been in custody, and at trial she demonstrated no plan for making progress in the future. Clear and convincing evidence established that the mother failed to substantially comply with the plan.

Regarding persistence of conditions, this ground was established by clear and convincing evidence, based on the above findings. The mother's situation was not dramatically different than it had been 16 months before, and there was no indication that it would change for the better in the near future.

The mother further asserts that the termination was not in the child's best interests, but the mother's unremedied addiction and alcohol problems, and the fact that she was not doing anything to address these problems, would subject the child to an environment which would upset the stability he has found in the foster placement. The evidence showed that the child was happy with the foster parents, and he often did not want to visit with the mother. Clearly, the child's best interest is to allow him to be adopted so that he can be in a stable, permanent home.

Finally, the mother argues that DCS did not make reasonable efforts to help her, which is required by Tenn. Code Ann. §36-1-113(I)(2).[1] This statutory section states that when determining whether a termination is in the child's best interests, the court should consider whether the parent has "failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible." *Id*. This statute requires a showing that reasonable efforts were made by DCS to help the parent make a change, but that the parent failed. We have previously recognized, DCS must make "reasonable" efforts, not "herculean" efforts. *DCS v. Malone*, 1998 WL 46461 (Tenn. Ct. App. Feb. 5. 1998). The requirement of reasonable efforts is contained in Tenn. Code Ann. §36-1-113(I). Any efforts by the Department and the results are only one factor of many which the Trial Court must

---

[1] *See DCS V. Malone*, 1998 WL 46461 (Tenn. Ct. App. Feb. 5, 1998) (Tenn. Code Ann. §36-1-113 provides the proper framework for this issue in a termination proceeding); *see also DCS v. Short*, 2003 WL 21338699 (Tenn. Ct. App. June 10, 2003).

consider. In this case, the Trial Court found that DCS had made reasonable efforts to help the mother and was not required to "hold her hand" or supervise her 24/7. This finding is supported by the proof.[2]

We conclude that a statutory basis for terminating parental rights was established by clear and convincing evidence and termination was shown to be in the child's best interest based upon the statutory criteria. We affirm the Trial Court's Judgment terminating the parental rights of the mother.

The cause is remanded, with the cost of the appeal assessed to the mother.

_____
HERSCHEL PICKENS FRANKS, P.J.

---

[2]Since the enactment of Tenn. Code Ann. §36-1-113(h)(1)(A), a petition to terminate parental rights, "shall" be filed by the department when a child has been in custody for 15 of the last 22 months.